**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

LINDA LENZI, on behalf of herself and all
others similarly situated,

Plaintiff,

v.

L.L. BEAN, INC.,

Defendant.

Case No. 6:23-cv-06117-FPG

## MEMORANDUM IN OPPOSITION TO
## DEFENDANT L.L. BEAN, INC.'S MOTION TO DISMISS

Joseph N. Kravec, Jr. (No. JK-3696)
**FEINSTEIN DOYLE PAYNE**
**& KRAVEC, LLC**
29 Broadway, 24th Floor
New York, NY 10006-3205
Telephone: (212) 952-0014
Email: jkravec@fdpklaw.com

-and-

429 Fourth Avenue
Law & Finance Building, Suite 1300
Pittsburgh, PA 15219
Telephone: (412) 281-8400
Facsimile: (412) 281-1007

Antonio Vozzolo, Esq. (petition for
admission to be filed)
Andrea Clisura, Esq. (petition for admission
to be filed)
**VOZZOLO LLC**
499 Route 304
New City, NY 10956
Telephone: (201) 630-8820
Facsimile: (201) 604-8400
Email: avozzolo@vozzolo.com
Email: aclisura@vozzolo.com

-and-

345 Route 17 South
Upper Saddle River, NJ 07458
Telephone: (201) 630-8820
Facsimile: (201) 604-8400

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................. 1

II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY ..................................... 3

III.   LEGAL STANDARDS ........................................................................ 6

IV.   LEGAL ARGUMENT........................................................................ 10

    A.  L.L. Bean's Attack on Ms. Lenzi's Credibility Provides
       No Basis for Dismissal of Her Complaint ................................................. 10

    B.  L.L. Bean's Refund Policy is Irrelevant ................................................... 16

V.    CONCLUSION................................................................................ 19

# TABLE OF AUTHORITIES

**Cases**                                                                        **Page(s)**

*All. for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*,
    436 F.3d 82 (2d Cir. 2006) ................................................................. 8

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
    671 F.3d 140 (2d Cir. 2011) ............................................................... 7

*Bord v. Rubin, 97 Civ. 6401,*
    (MBM), 1998 U.S. Dist. LEXIS 11364 (S.D.N.Y. July 23, 1998) ....................................... 15

*Bronx Indep. Living Servs. v. Metro. Transp. Auth.*,
    2021 U.S. Dist. LEXIS 59672 (S.D.N.Y. Mar. 29, 2021) .................................... 10

*Brown v. McKinley Mall, LLC, No. 15-CV-1044-FPG-LGF*,
    2018 U.S. Dist. LEXIS 83477 (W.D.N.Y. May 17, 2018) .................................... 12

*Cacchillo v. Insmed, Inc.*,
    638 F.3d 401 (2d Cir. 2011) ............................................................... 7

*Calix v. Pope,*
    (RPK) (PK), 2022 U.S. Dist. LEXIS 176238 (E.D.N.Y. Sep. 28, 2022) .......................... 9, 10

*Carter v. HealthPort Techs., LLC,*
    822 F.3d 47 (2d Cir. 2016) ............................................................... 7, 9

*Garcia v. Four Bros. Pizza,*
    (VB), 2014 U.S. Dist. LEXIS 76015 (S.D.N.Y. May 23, 2014) ............................................. 8

*Gladstone, Realtors v. Bellwood*,
    441 U.S. 91 (1979) ................................................................. 7, 9

*In re HP Inkjet Printer Litig.,*
    2008 U.S. Dist. LEXIS 56979 (N.D. Cal. July 25, 2008)(3) ................................................. 12

*In re Kind LLC "Healthy & All Nat." Litig.*,
    337 F.R.D. 581, 597 (S.D.N.Y. 2021) .................................................................. 11

*In re Scotts EZ Seed Litig.*,
    304 F.R.D. 397 (S.D.N.Y. 2015) .................................................................. 12, 18

*In re Takata Airbag Prods. Liab. Litig.*,
    396 F. Supp. 3d 1101 (S.D. Fla. 2019) .......................................................... 11, 14

*John v. Whole Foods Mkt. Grp., Inc.*,
    858 F.3d 732 (2d Cir. 2017) ............................................................... 6, 7

*Kamen v. Am. Tel. & Tel. Co.*,
  791 F.2d 1006 (2d Cir. 1986) ........................................................... *passim*

*Kurtz v. Kimberly-Clark Corp.*,
  321 F.R.D. 482 (E.D.N.Y. 2017) ............................................................... 17

*Lacour v. Colgate-Palmolive Co.*,
  338 F.R.D. 324 (S.D.N.Y. 2021) ............................................................... 18

*Leighton Techs. LLC v. Oberthur Card Sys.*,
  2007 U.S. Dist. LEXIS 57873 (S.D.N.Y. July 11, 2007) ....................... 15

*Leonard v. Abbott Labs., Inc.,*,
  (ADS)(WDW), 2012 U.S. Dist. LEXIS 30608 (E.D.N.Y. Mar. 5, 2012) ............ 18

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ........................................................................ 7, 12

*Mosely v. Vitalize Labs, LLC,*,
  (RJD) (RLM), 2015 U.S. Dist. LEXIS 111857 (E.D.N.Y. Aug. 24, 2015) ......... 10

*Ogden v. Bumble Bee Foods, LLC*,
  2014 U.S. Dist. LEXIS 565 (N.D. Cal. Jan. 2, 2014) ............................... 12

*Ries v. Ariz. Bevs. USA LLC*,
  287 F.R.D. 523 (N.D. Cal. 2012) ............................................................. 12

*Sik Gaek, Inc. v. Yogi's II, Inc.,*
  (ARR) (VVP), 2013 U.S. Dist. LEXIS 78557 (E.D.N.Y. Feb. 28, 2013) ............. 9

*Sik Gaek, Inc. v. Yogi's II, Inc.,*
  (ARR) (VVP), 2013 U.S. Dist. LEXIS 77742 (E.D.N.Y. May 31, 2013) .............. 9

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016) ............................................................................... 6

*Takeda Chem. Indus. v. Watson Pharm., Inc.*,
  329 F. Supp. 2d 394 (S.D.N.Y. 2004) ............................................... 9, 10

*Tescher v. Experian Info. Sols., Inc.,*
  (PMH), 2022 U.S. Dist. LEXIS 31759 (S.D.N.Y. Feb. 23, 2022) .......... 14, 15

**Statutes**

New York General Business Law §§ 349 and 350 ........................................... *passim*

**Rules**

Federal Rule of Civil Procedure 12 ......................................................... *passim*

Federal Rule of Civil Procedure 56 ........................................... 7, 8, 11, 13

**Other**

Article III of the Constitution ............................................................................ *passim*

## I.  INTRODUCTION

L.L. Bean, Inc. ("L.L. Bean" or "Defendant") moves to dismiss Plaintiff Linda Lenzi ("Plaintiff")'s Complaint on the basis that her purchase of L.L. Bean's Women's Storm Chaser Boots supposedly could not have happened.  As the sole evidence in support of its claim, L.L. Bean submits a declaration from Christopher Diagostino, its Director of Store Operations, who declares that only one pair of Women's Storm Chaser Boots was sold by L.L. Bean's Victor, New York store from January 1, 2020 to June 1, 2020.  *See* Dkt. 10-2 ("Diagostino Decl."), ¶ 4.  Mr. Diagostino provides no information regarding the reliability of any records he may have reviewed and no such records were submitted to Plaintiff or the Court.  Instead, Mr. Diagostino states without any personal knowledge that "entries are made on those records in a timely manner by people with knowledge of the information being entered[.]"  *Id.*, ¶ 2.  The only document attached to Mr. Diagostino's declaration is one version of L.L. Bean's return policy.  *Id.*, Exh. A.

However, L.L. Bean has publicly acknowledged that its inventory records are not so reliable.  In fact, a trade publication reported in 2022 that "[a]ccording to Chrissy Atwood, senior project manager for retail stores at L.L.Bean, . . . the process of discovering which store a product was available in when it was out of stock or back-ordered on the website created a hassle for store teams and call center associates alike" when employees would "'try to find the product in the store' [and] '[i]f inventory was inaccurate, they'd get connected to another store—we were doing that rerouting manually.'"  *See* Declaration of Joseph N. Kravec, Jr., filed concurrently herewith ("Kravec Decl."), Exh. 4 (attaching Taylor, Glenn, *Inside L.L.Bean's 200,000 Ship-From-Store Peak Season,* Sourcing Journal (May 26, 2022), *available at* https://news.yahoo.com/inside-l-l-bean-200-171438625.html).  L.L. Bean's attempt to obtain dismissal of Ms. Lenzi's Complaint based on a single declaration from an individual lacking personal knowledge, without submitting

any sales or inventory records that supposedly support its claim that Ms. Lenzi's purchase was an impossibility, and without any evidence or discovery as to the reliability of such records falls flat.

Ms. Lenzi submits a declaration concurrently with this filing, based upon her personal knowledge and under penalty of perjury, attesting to her purchase of L.L. Bean's Women's Storm Chaser Boots. *See* Declaration of Linda Lenzi, filed concurrently herewith ("Lenzi Decl."), ¶¶ 1-11. Ms. Lenzi's declaration supports and is sufficient evidence of her purchase, and thus her injury, at this stage in the proceedings. She is further willing and competent to testify to her purchase at an evidentiary hearing and/or at trial. *Id.*, ¶ 1.

As detailed herein, Mr. Diagostino's declaration is insufficient to warrant dismissal of Ms. Lenzi's claims. Further, Mr. Diagostino's assertion that Ms. Lenzi could have returned the boots to L.L. Bean for a full refund is both incorrect and irrelevant. First, under the terms of the return policy submitted by L.L. Bean, Ms. Lenzi would not have qualified for a refund.[1] Second, the availability of any refund provides no basis for dismissal of Ms. Lenzi's claims. This is not a case where L.L. Bean's boots failed to live up to Ms. Lenzi's subjective hopes or expectations. Rather, L.L. Bean affirmatively misrepresented and warranted the characteristics and benefits of the boots it sold to Ms. Lenzi and other consumers, claiming they were waterproof when they were not. L.L. Bean knew its Storm Chaser Boots were not waterproof given the supplier of the zippers it used on the boots advised L.L. Bean that the zippers were not waterproof, *see, e.g.*, Dkt. 1 ("Complaint"), ¶ 102, and given that other customers had complained that its zippered boots were

---

[1] *See* Diagostino Decl., Exh. A ("We require proof of purchase to honor a refund or exchange. If you provide us your information when you check out, we will typically have a record of your purchase. Otherwise, we require a physical receipt."). Mr. Diagostino claims L.L. Bean has no record of Ms. Lenzi's purchase (*Id.* ¶¶ 4-7), and Ms. Lenzi discarded the receipt after she bought the boots but before she first experienced water leakage weeks later. Lenzi Decl., ¶ 8.

not waterproof at least as far back as 2019.  *See id.*, ¶¶ 111-115.  As L.L. Bean now admits in various marketing materials, its zippered boots are not actually waterproof, *see id.*, ¶¶ 78-87.  L.L. Bean is liable for its false advertising deceiving Ms. Lenzi who is due statutory damages that exceed her purchase price pursuant to New York General Business Law §§ 349 and 350.[2]

## II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Lenzi purchased a pair of L.L. Bean Women's Storm Chaser Boots from L.L. Bean's Eastview Mall retail store located in Victor, New York.  Lenzi Decl., ¶ 6.  To the best of Ms. Lenzi's recollection, she made her purchase in or around early March of 2020.  *Id.*, ¶¶ 3, 5.  Ms. Lenzi only travels to the Eastview Mall occasionally.  *Id.*, ¶ 4.  On the date on which she purchased the Women's Storm Chaser Boots, Ms. Lenzi went to the mall for the purpose of eating at a P.F. Chang's restaurant as well as visiting a Vera Brady retail store located there.  *Id.*, ¶ 3.  On this occasion, Ms. Lenzi also visited the L.L. Bean located at Eastview Mall to look for and purchase waterproof boots.  *Id.*, ¶ 5.

Ms. Lenzi purchased the Women's Storm Chaser Boots in reliance on L.L. Bean's representations and warranties that the product was "waterproof."  *Id.*, ¶ 6.  She would not have purchased the Women's Storm Chaser Boots otherwise.  *Id.*; Complaint, ¶¶ 10, 16, 158, 193 202.  Ms. Lenzi believes she paid approximately $100.00 to $125.00 for the boots in cash that she had left over from the recent Christmas holiday.  Lenzi Decl., ¶ 6.

Not long after Ms. Lenzi's visit to the mall, the L.L. Bean store where she purchased the boots was shut down on or around March 17, 2020, as a result of the COVID-19 public health emergency.  *See* Kravec Decl., ¶ 20, Exh. 5 (attaching L.L. Bean, *Our COVID-19 Response (UPDATED)* (Mar. 16, 2020), *available at*

---

[2] L.L. Bean is also liable for its breach of express warranty and breach of implied warranty of merchantability as alleged in the Complaint.

https://www.llbean.com/llb/shop/518090?page=newsroom-covid-19-update-march-2020). In subsequent days, the Eastview Mall, including its L.L. Bean retail location, like other non-essential businesses in New York State, was ordered closed as part of the New York Governor's Executive Orders mandating the closure of such businesses due to the COVID-19 pandemic. *See id.*, ¶ 21, Exh. 6 (attaching Randy Gorbman, *Area malls closing due to coronavirus containment efforts*, WXXI NEWS (Mar. 18, 2020), *available at* https://www.wxxinews.org/business/2020-03-18/area-malls-closing-due-to-coronavirus-containment-efforts).

Approximately one month after purchasing the boots, on a day of inclement weather Ms. Lenzi recalls was in April 2020, Ms. Lenzi experienced water leakage into the Women's Storm Chaser Boots. Lenzi Decl., ¶ 7. Ms. Lenzi did not attempt to return the boots. *Id.*, ¶ 9. Not only was the retail location where she purchased the boots closed due to the COVID-19 pandemic, Ms. Lenzi was no longer in possession of a receipt for the product. *Id.*, ¶¶ 8-9. Ms. Lenzi does not typically retain receipts after purchasing shoes or other apparel. *Id.*, ¶ 8. With the physical retail location closed, rather than attempt to make a return that she did not believe would be successful (and in fact, would not have been successful by the terms of the return policy submitted by Defendant), the boots were ultimately donated to Goodwill or a similar charitable organization in late 2020 or early 2021. *Id.*, ¶¶ 9-10. Ms. Lenzi is willing to testify in Court and answer any questions relating to her purchase. *Id.*, ¶ 1.

On April 21, 2022, Ms. Lenzi, through her counsel, sent Defendant a pre-suit notice and demand seeking compensation for herself and other consumers. *See* Complaint, ¶ 172; *see also* Kravec Decl., ¶ 2, Exh. 1 ("Pre-Suit Notice"). After receiving Plaintiff's Pre-Suit Notice and as detailed in Plaintiff's Complaint, L.L. Bean dramatically changed the marketing for the zippered boots, removing various "waterproof" representations, modifying product descriptions, adding

disclaimers to descriptions on retail webpages and in its mail order catalogs, and swapping out retail store shelf strips to state the boots are merely "water-resistant." *See* Complaint, ¶¶ 78-87. Nonetheless, despite its admissions that the boots described in Plaintiff's Pre-Suit Notice are not in fact waterproof, L.L. Bean declined to respond to the Pre-Suit Notice. *See* Kravec Decl., ¶ 6. Although Defendant's counsel has represented to Plaintiff's counsel that she called Plaintiff's counsel in response to the Pre-Suit Notice prior to the filing of the Complaint, Plaintiff's counsel has no record of this phone call being made and Defendant's counsel made no attempt to reach Plaintiff's counsel by letter, email, or even another attempt by telephone, despite the Pre-Suit Notice providing multiple means of contact. *See id.*, ¶¶ 4, 9. Having received no response from L.L. Bean after providing Pre-Suit Notice, Ms. Lenzi filed her Complaint in this Court on February 17, 2023, seeking compensation for herself and other consumers who were deceived by L.L. Bean's marketing. *See id.*, ¶ 7.

On May 15, 2023, L.L. Bean filed its Motion to Dismiss Plaintiff's Complaint, asserting that Ms. Lenzi lacks standing to assert claims based on her purchase of the boots, because "it never happened." Dkt. 10-1 ("Def.'s Mot.") at 1. L.L. Bean makes this claim based on a Declaration by Director of Store Operations Christopher Diagostino, who has no personal knowledge of the transactions and without submitting any of the records upon which Mr. Diagostino claims to rely. Defendant's counsel also represents that Plaintiff's counsel has refused and/or ignored requests by Defendant for proof of purchase. In fact, Plaintiff's counsel responded to Defendant's requests multiple times and stated that Plaintiff would provide further information regarding her purchase, contingent on Defendant's agreement to mutually exchange information. *See* Kravec Decl., ¶¶ 12, 15-16, Exh. 3 (emails between Plaintiff's counsel and Defendant's counsel). Specifically, on Monday, May 8, 2023, Mr. Kravec wrote in response to counsel Meegan Brooks, "As I previously

indicated, the threshold issue for us to doing any individual settlement is that consumers who wish to get a refund for any of the Products identified in our Complaint ("Products") can and are generally notified of this right (not just when they ask for a refund). . . . If we can resolve this issue, we are willing to exchange information about Plaintiff's purchase as long as LL Bean commits to give us the unit sales numbers we previously requested." *Id.*, ¶ 12, Exh. 3, at 2. The following day, on May 9, 2023, Mr. Kravec again responded to Ms. Brooks, stating,

> We are engaged in informal confidential settlement discussions. Neither party is obligated to produce any information to the other at this time. As such, your demand that we provide proof of purchase immediately is not well taken . . . . That said, I have already stated that "If we can resolve this [notification] issue, we are willing to exchange information about Plaintiff's purchase as long as LL Bean commits to give us the unit sales numbers we previously requested." This is a mutual exchange of information that each side says they need to move the ball forward toward settlement. If your client is serious about settling at this time, we'd think such a mutual exchange would not be a problem.

*Id.*, ¶ 15-16, Exh. 3, at 1.

L.L. Bean declined to make such commitment and declined to respond to Plaintiff's counsel's suggestion that "a good mediator would be best suited to help get [each side] past [its concerns] and move us toward a resolution." *Id.*

## III. LEGAL STANDARDS

To establish standing under Article III of the Constitution, "a plaintiff 'must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 736 (2d Cir. 2017) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). A party invoking federal jurisdiction bears the burden of establishing standing; however, "the stage at which, and the manner in which, the issue [of standing] is raised affect (a) the obligation of the plaintiff to respond, (b) the manner in which the district court considers the

challenge, and (c) the standard of review applicable to the district court's decision." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016).

"A plaintiff's burden to demonstrate standing increases over the course of litigation." *Cacchillo v. Insmed, Inc.*, 638 F.3d 401 at 404 (2d Cir. 2011) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). "Each element of standing 'must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation,' and at the pleading stage, 'general factual allegations of injury resulting from the defendant's conduct may suffice.'" *John*, 858 F.3d at 736 (quoting *Lujan*, 504 U.S. at 561); *Cacchillo*, 638 F.3d at 404 (same). "In response to a summary judgment motion . . . the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' Fed. Rule Civ. Proc. 56(e), which for purposes of the summary judgment motion will be taken to be true." *Lujan*, 504 U.S. at 561. "[A]t the final stage, those facts (if controverted) must be 'supported adequately by the evidence adduced at trial.'" *Id.* (quoting *Gladstone, Realtors v. Bellwood*, 441 U.S. 91, 115 n.31 (1979)).

Accordingly, when a defendant's Fed. R. Civ. P. 12(b)(1) motion challenging standing "is facial, *i.e.*, based solely on the allegations of the complaint . . . , the plaintiff has no evidentiary burden" and "[t]he task of the district court is to determine whether the Pleading 'allege[s] facts that affirmatively and plausibly suggest that [the plaintiff] has standing to sue.'" *Carter*, 822 F.3d at 56 (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)). However, when a defendant "make[s] a fact-based Rule 12(b)(1) motion, proffering evidence beyond the Pleading . . . the plaintiffs will need to come forward with evidence of their own . . . 'if the affidavits submitted on a 12(b)(1) motion . . . reveal the existence of factual problems' in the assertion of jurisdiction." *Id.* at 57 (citation omitted; emphasis supplied by *Carter*). "While a 12(b)(1) motion cannot be converted into a Rule 56 motion [for summary judgment], Rule 56 is

relevant to the jurisdictional challenge in that the body of decisions under Rule 56 offers guidelines in considering evidence submitted outside the pleadings" and "courts have required that evidence submitted outside the pleadings be 'competent.'" *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986).

"As in any case requiring determination of Article III standing, once the Defendants' motion to dismiss for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1) put the Plaintiffs' Article III standing in issue, the District Court has leeway as to the procedure it wishes to follow." *All. for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 87-88 (2d Cir. 2006); *see also Garcia v. Four Bros. Pizza*, No. 13 CV 1505 (VB), 2014 U.S. Dist. LEXIS 76015, at *8-9 (S.D.N.Y. May 23, 2014) ("When, as here, jurisdictional facts are placed in dispute, the Court retains considerable latitude in devising the procedures it will follow to ferret out the facts pertinent to jurisdiction . . . ." (internal quotations omitted)). The Second Circuit has set forth a number of possible approaches a District Court may take:

> After limited discovery on the jurisdictional issue, the matter might be appropriate for resolution on motion supported by affidavits, or, if a genuine dispute of material fact exists, the Court may conduct a hearing limited to Article III standing. Or, where the evidence concerning standing overlaps with evidence on the merits, the Court might prefer to proceed to trial and make its jurisdictional ruling at the close of the evidence. If, however, the overlap in the evidence is such that fact-finding on the jurisdictional issue will adjudicate factual issues required by the Seventh Amendment to be resolved by a jury, then the Court must leave the jurisdictional issue for the trial. The Court may also deem it appropriate to make a preliminary finding on jurisdictional facts, subject to revision later in the proceedings or at trial.

*All. for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 (2d Cir. 2006). Prior to making a ruling, the Court "should take care to give the plaintiff ample opportunity to secure and present evidence relevant to the existence of jurisdiction." *Garcia*, 2014 U.S. Dist. LEXIS 76015, at *8-9 (internal quotation omitted).

However, "[a]lthough the court is required in some instances to make factual findings in deciding Rule 12(b)(1) motions, there are situations where the court is not permitted to resolve factual disputes on such motions." *See, e.g.*, *Sik Gaek, Inc. v. Yogi's II, Inc.*, No. CV-10-4077 (ARR) (VVP), 2013 U.S. Dist. LEXIS 78557, at *6 (E.D.N.Y. Feb. 28, 2013), *report and recommendation adopted*, 2013 U.S. Dist. LEXIS 77742 (E.D.N.Y. May 31, 2013). Where jurisdiction is so intertwined with the merits that its resolution depends on the resolution of the merits, the court should use the standard applicable to a motion for summary judgment and dismiss only where no triable issues of fact exist." *Takeda Chem. Indus. v. Watson Pharm., Inc.*, 329 F. Supp. 2d 394, 402 (S.D.N.Y. 2004) (internal quotations omitted). Moreover, "[i]t is a settled rule that credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." *Calix v. Pope*, No. 18-CV-3980 (RPK) (PK), 2022 U.S. Dist. LEXIS 176238, at *7 (E.D.N.Y. Sep. 28, 2022) (internal quotation omitted); *see also* *Gladstone*, 441 U.S. at 115 n.31 ("Although standing generally is a matter dealt with at the earliest stages of litigation, usually on the pleadings, it sometimes remains to be seen whether the factual allegations of the complaint necessary for standing will be supported adequately by the evidence adduced at trial.").

Finally, as *Carter v. HealthPort Techs,* cited by Defendant (*see* Def.'s Mot. at 4), makes clear, were the Court to find that dismissal for lack of Article III standing was appropriate, such dismissal is for lack of subject matter jurisdiction and therefore must be without prejudice. *See* *Carter*, 822 F.3d at 54-55 (explaining "where a complaint is dismissed for lack of Article III standing, . . . [s]uch a dismissal is one for lack of subject matter jurisdiction" and "the dismissal is without prejudice").

## IV.    LEGAL ARGUMENT

### A.    L.L. Bean's Attack on Ms. Lenzi's Credibility Provides No Basis for Dismissal of Her Complaint

L.L. Bean brings a fact-based Rule 12(b)(1) motion, proffering a declaration that alludes to business records L.L. Bean claims "definitely prove" Ms. Lenzi's purchase "never happened." *See* Def's Mot. at 1.  L.L. Bean's motion fails on multiple grounds.  First, Plaintiff's sworn declaration setting forth specific facts attesting to her purchase is sufficient evidence at this stage of the proceedings to support her standing.  Second, it would be error for the Court to rely on Defendant's evidence to dismiss Plaintiff's claim when it consists merely of conclusory hearsay statements made without personal knowledge.

**First**, in support of her opposition to Defendant's motion, Ms. Lenzi has submitted a declaration under penalty of perjury that sets forth specific facts regarding her purchase of the Women's Storm Chaser Boots.  *See* Lenzi Decl., ¶¶ 1-11.  Ms. Lenzi is willing to testify in Court as to her purchase and to answer any questions the Court may have.  *See* Lenzi Decl., ¶ 1.  That is all the law requires at this stage of the proceedings.

Because Defendant's challenge is an attack on Ms. Lenzi's credibility and goes to the very heart of her claims—whether she purchased and was deceived by the marketing for the subject boots—it is appropriate, and indeed required, that the Court apply to this dispute the standards applicable to a motion for summary judgment.  *See Takeda*, 329 F. Supp. 2d at 402 (where jurisdiction intertwined with merits, courts should "dismiss only where no triable issues of fact exist"); *Calix*, 2022 U.S. Dist. LEXIS 176238, at *7 ("settled rule that credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment"); *Bronx Indep. Living Servs. v. Metro. Transp. Auth.*, 2021 U.S. Dist. LEXIS 59672, at *36-37 (S.D.N.Y. Mar. 29, 2021) ("To the

10

extent Defendants are insinuating that Hardy and Diaz do not want to use the Middletown Road Station and were not actually deterred from using it, that is a credibility determination that cannot be decided on summary judgment."); *see also In re Takata Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d 1101, 1131 (S.D. Fla. 2019) ("Mercedes's challenge directly implicates the merits of the case because it attacks the Plaintiffs' theory of fraud: that Mercedes was intimately involved in the design and testing of the airbags . . . . Because Mercedes's Separate Motion to Dismiss implicates the merits of Plaintiffs' case, the Court must treat the motion as a motion for summary judgment under Rule 56 and refrain from deciding disputed factual issues.") (internal quotations and alterations omitted).

In *Mosely v. Vitalize Labs, LLC*, No. 13 CV 2470 (RJD) (RLM), 2015 U.S. Dist. LEXIS 111857 (E.D.N.Y. Aug. 24, 2015), the defendants made an argument strikingly similar to the one Defendant makes here, but on summary judgment. Specifically, defendants argued:

> that [plaintiff] has failed to establish the cognizable "injury in fact" required for Article III standing because he cannot show that he ever purchased *any* E-BOOST products. . . . First, defendants argue that [plaintiff]'s testimony regarding his E-BOOST purchases is not credible. Second, defendants argue that [plaintiff] lacks physical proof of his purchases. Third, defendants argue that [plaintiff] is bound by his prior assertions that he purchased E-BOOST at stores that defendants claim do not in fact sell the product.

*Id.* at *9-10. The Court denied Defendant's motion based on standing, explaining that absent extraordinary circumstances, plaintiff's credibility 'is not an issue the Court may address." *Id.* at *9. Further, the Court made clear that Plaintiff's purchase need not be documented by any physical proof of purchase, such as receipts or credit card statements—again, the Court explained, a reasonable juror could find plaintiff purchased the product based on his testimony. *Id.* at *13-15.

Other Courts have held similarly. *See In re Kind LLC "Healthy & All Nat." Litig.*, 337 F.R.D. 581, 597 (S.D.N.Y. 2021) (finding classes ascertainable, noting "[i]mposing a receipt

requirement would severely constrict consumer class actions where most consumers do not keep receipts because the purchase price is low and part of a minerun retail transaction."); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 407 (S.D.N.Y. 2015) (same); *Ogden v. Bumble Bee Foods, LLC*, No. 5:12-CV-01828-LHK, 2014 U.S. Dist. LEXIS 565, at *3 n.3 (N.D. Cal. Jan. 2, 2014) ("Because Ogden has independent knowledge of her own grocery purchases, she need not submit receipts documenting those purchases in order to testify about them." (granting summary judgment on other grounds)); *Ries v. Ariz. Bevs. USA LLC*, 287 F.R.D. 523, 532 (N.D. Cal. 2012) (where defendants complained plaintiffs had no receipts or other documentation of their purchases, plaintiffs' estimates of their losses in sworn testimony represented admissible evidence); *In re HP Inkjet Printer Litig.*, No. C 05-3580 JF, 2008 U.S. Dist. LEXIS 56979, at *8-9 (N.D. Cal. July 25, 2008) (rejecting standing arguments that went "to the credibility of the evidence" and where defendant argued plaintiff "(1) presently does not own the inkjet printer . . . ; (2) has no proof of purchase evidencing that he ever owned an HP inkjet printer; (3) has no receipts for the purchase of any of the replacement ink cartridges . . . ; and (4) cannot remember either the model number of the printer or the replacement ink cartridges," explaining that even where plaintiff's "evidence [wa]s weak, a reasonable jury could find [plaintiff] suffered a cognizable injury").

This Court has also recognized that on a motion for summary judgment, a "Plaintiff's sworn statements suffice to support his standing argument." *Brown v. McKinley Mall, LLC*, No. 15-CV-1044-FPG-LGF, 2018 U.S. Dist. LEXIS 83477, at *10 n.5 (W.D.N.Y. May 17, 2018) (Geraci, J.) (citing *Lujan*, 504 U.S. at 561, for the proposition that "plaintiffs must set forth specific facts by affidavit or other evidence"). Accordingly, Ms. Lenzi is not required to have retained a purchase receipt or be in possession of physical purchase records in order to succeed on her claims. As these cases recognize, Plaintiff's testimony is sufficient to prove her purchase. At this early

stage in the litigation, Plaintiff's sworn declaration providing facts supporting her purchase is sufficient evidence of a genuine dispute of material fact to defeat Defendant's motion. *See* Fed. R. Civ. P. 56.

**Second**, in light of Ms. Lenzi's sworn declaration, it would be error for the Court to rely on Defendant's evidence to dismiss Plaintiff's claims when such evidence is not competent to challenge her standing. *See Kamen*, 791 F.2d at 1011 ("[C]ourts have required that evidence submitted outside the pleadings be 'competent.'"). The only evidence submitted in support of L.L. Bean's motion is the declaration of Christopher Diagostino, Director of Store Operations. Mr. Diagostino states that in a five-month span from January 1, 2020 to June 1, 2020, only one pair of Women's Storm Chaser Boots was sold from the retail location where Ms. Lenzi made her purchase. Diagostino Decl., ¶ 4. However, Mr. Diagostino has no personal knowledge regarding entries of individual product sales transactions at the Victor, New York store. He sets forth no basis for any personal knowledge regarding Defendant's sales tracking or inventory processes and does not even set forth generally what L.L. Bean's policies are with regard to those practices. His declaration does not identify any specific records on which he purports to have relied to base his conclusion that Ms. Lenzi's purchase was an impossibility. He refers generally to business records without attaching any such records for Plaintiff's or the Court's assessment. His declaration does not speak at all to the reliability of any records other than to say, again without setting forth the basis for his knowledge, that "entries are made on those records in a timely manner by people with knowledge of the information being entered." *Id.*, ¶ 2. This statement appears to suggest that at least to some degree sales transactions are manually entered into the relevant records, and thus subject to human as well as technological error. We do not know the manner of entry into the records, or how or where or for how long the records are stored, since Mr. Diagostino does not

provide any such details.  Notably, he does not state the records are free from error and he provides no information regarding any historic discrepancies.

In light of these deficiencies, the Diagostino Declaration amounts merely to conclusory hearsay that should be disregarded by the Court.  *See Kamen*, 791 F.2d at 1011 (analogizing summary judgment rules and finding "it was improper for the district court, in ruling on the 12(b)(1) motion, to have considered the conclusory and hearsay statements contained in the affidavits," describing affidavits as "entirely insufficient" where "the crucial statement . . . was not based upon personal knowledge" and "contain[ed] no information to indicate a basis in personal knowledge"); *Tescher v. Experian Info. Sols., Inc.*, No. 21-CV-02266 (PMH), 2022 U.S. Dist. LEXIS 31759, at *9 (S.D.N.Y. Feb. 23, 2022) ("[E]ven if the Court were to overlook the procedurally defective way in which this hearsay document was submitted, and consider its contents, the document presents far more factual questions than it claims to solve. . . . The Court cannot wade into fact and credibility determinations on a motion to dismiss by considering a hearsay document that was not . . . integral to the First Amended Complaint.  The Court, consequently, will not consider the extraneous document."); *In re Takata Airbag Prods. Liab. Litig.*, 396 F. Supp. 3d 1101, 1131 (S.D. Fla. 2019) ("[T]he Court finds it premature to decide factual issues and dismiss the entire lawsuit against Mercedes on the basis of three letters containing unsworn hearsay statements, without the benefit of a fully developed factual record. Once that record is developed, the Court will entertain the expected motions for summary judgment. At this stage, however, Mercedes's Separate Motion to Dismiss for lack of standing based on these Takata letters is DENIED as premature.").

In fact, Defendant's inventory and sales records are subject to discrepancies.  In 2022, the trade publication Sourcing Journal cited Chrissy Atwood, senior project manager for retail stores

at L.L. Bean, to illustrate some of the manual processes that convolute store operations. *See* Kravec Decl., ¶ 19, Exh. 4. Sourcing Journal reported:

> According to Chrissy Atwood, senior project manager for retail stores at L.L.Bean, the retailer had begun to include some of its in-store inventory online prior to the deployment [of new technology]. But the process of discovering which store a product was available in when it was out of stock or back-ordered on the website created a hassle for store teams and call center associates alike.
>
> "Calls were being transferred, and the customer would be put on hold—they'd take the shopper's information and then try to find the product in the store," Atwood said at the Aptos Engage conference last week. "If inventory was inaccurate, they'd get connected to another store—we were doing that rerouting manually."

*Id.* Ms. Atwood's comments reinforce that the Diagostino Declaration does not show that L.L. Bean's records regarding specific sales of the Women's Storm Chaser Boots are infallible and even "presents far more factual questions than it claims to solve." *Tescher*, 2022 U.S. Dist. LEXIS 31759, at *9.

Given the procedural posture of this case, the nature of the evidentiary submissions by the parties, and the fact that L.L. Bean's challenge is an attack on Ms. Lenzi's credibility that goes to the merits of her claim and is a matter for resolution by a jury at trial, this Court may deny Defendant's motion based on the papers alone.

However, if the Court determines it should make further findings of fact, "there is authority for the proposition that a district court is required to hold an evidentiary hearing if decision on a Rule 12(b)(1) motion to dismiss requires the court to 'resolve disputed issues of credibility or material facts.'" *Leighton Techs. LLC v. Oberthur Card Sys.*, 2007 U.S. Dist. LEXIS 57873, at *15-16 (S.D.N.Y. July 11, 2007) (quoting *Bord v. Rubin*, 97 Civ. 6401 (MBM), 1998 U.S. Dist. LEXIS 11364, at *16 (S.D.N.Y. July 23, 1998)). Further, Plaintiff should be permitted to conduct limited discovery to secure and present relevant evidence. *See, e.g.*, *Kamen*, 791 F.2d at 1011

(finding "it was improper for the district court, in ruling on the 12(b)(1) motion, to have considered the conclusory and hearsay statements contained in the affidavits submitted by defendants, and to deny plaintiff limited discovery on the jurisdictional question"). To that end, Plaintiff has separately filed a motion for jurisdictional discovery since no discovery has occurred in this case.

### B.     L.L. Bean's Refund Policy Is Irrelevant

The only document Mr. Diagostino attaches to his declaration is a version of L.L. Bean's return policy. *Id.*, Exh. A. Based on this document, Mr. Diagostino asserts that Ms. Lenzi "could have returned [the boots] for a full refund within a year of her purchase." Diagostino Decl., ¶ 8. Mr. Diagostino's statement is both incorrect and irrelevant.

First, by the terms of the policy its declarant submits, Ms. Lenzi would not have qualified for a refund of her purchase. L.L. Bean's policy states no less than seven (7) times that "proof of purchase" is required to return a product for a refund:

- "**We require proof of purchase to honor a refund or exchange**. If you provide us your information when you check out, we will typically have a record of your purchase. **Otherwise, we require a physical receipt**."

- "**Please include your proof of purchase with the products you wish to return** or exchange . . . ."

- "Return or Exchange by Mail . . . 1. Locate the Packing Slip. Find and complete the form printed on the packaging slip that came with your order. **We require proof of purchase to honor a refund or exchange**."

- "2. Prepare Your Package. **We require proof of purchase to honor a refund or exchange**."

- "Return or Exchange in Store . . . 1. **Find Your Item and Receipt. Please bring your receipts** along with your items . . . ."

- "What is the guarantee policy for purchases made before the policy change of Feb. 9, 2018? **We will generally accept those items with proof of purchase** . . . ."

- "What is the current return policy? Most products may be returned within one year of purchase, **with proof of purchase**."

*See* Diagostino Decl., Exh. A (emphasis added). By the time Ms. Lenzi experienced water leakage into the boots approximately a month after her purchase, she was no longer in possession of her product receipt and L.L. Bean claims it has no record of her purchase. Lenzi Dec., ¶ 8, Diagostino Decl., ¶¶ 4-7. Thus, Ms. Lenzi could not have benefited from L.L. Bean's refund policy since it would not "honor" a refund request without a receipt or record of her purchase.

Second, L.L. Bean does not actually assert that the availability of any refund provides any basis for dismissal of Ms. Lenzi's claims, nor could it. Even if Ms. Lenzi did qualify for a refund under Defendant's policy, a simple refund (less shipping costs) would not make Ms. Lenzi whole and would not fully compensate Ms. Lenzi and other consumers for their injuries. As alleged in Plaintiff's Complaint, L.L. Bean affirmatively misrepresented that the zippered boots it sold to Ms. Lenzi and other consumers were waterproof when they were not. L.L. Bean knew the boots were not waterproof given the manufacturer and supplier of the zippers clearly advised that the zippers were not waterproof, *see, e.g.*, Complaint, ¶ 102, and given that other customers had complained that the zippered boots were not waterproof at least as far back as 2019. *See id.*, ¶¶ 111-115. Indeed, in a comment buried on its consumer website, L.L. Bean even acknowledged that the zippers were not waterproof. *See id.*, ¶ 76. Only after receiving Plaintiff's Pre-Suit Notice, did L.L. Bean belatedly disclose to consumers in various marketing materials, that the boot zippers, and thus the boots themselves, are not waterproof. *See id.*, ¶¶ 78-87.

Accordingly, because of L.L. Bean's deception, Plaintiff is not simply entitled to a refund of her purchase price of $100 to $125. Plaintiff is due statutory damages of $550.00 pursuant to

New York General Business Law §§ 349 and 350.[3]  A refund would not provide Plaintiff complete relief (*i.e.*, the full measure of her damages) and it would do nothing to compensate the many other consumers who Plaintiff seeks to represent.  *See Kurtz v. Kimberly-Clark Corp.*, 321 F.R.D. 482, 553 (E.D.N.Y. 2017) ("The remedy available for plaintiffs in a class action — statutory damages of $50 or $500 per purchase — is a more effective remedy for most class members than a simple refund of their purchase price."); *Leonard v. Abbott Labs., Inc.*, No. 10-CV-4676 (ADS)(WDW), 2012 U.S. Dist. LEXIS 30608, at *78-79 (E.D.N.Y. Mar. 5, 2012) ("the New York . . . statutes provide for a minimum amount of statutory damages. Thus, even assuming the Plaintiffs were able to prove injury, but their damages were less than the statutory minimum, they would still be entitled to the minimum amount of statutory damages."). *See also de Lacour v. Colgate-Palmolive Co.*, 338 F.R.D. 324, 346 (S.D.N.Y. 2021) (finding class action superior to refund program where "because the money back guarantee is a non-adjudicative form of redress, it cannot effectuate the punitive remedies and purposes of statutes such as [New York] GBL Sections 349 and 350"); *In re Scotts EZ Seed Litig.*, 304 F.R.D. 397, 415-16 (S.D.N.Y. 2015) (same).

Defendant's suggestion that Plaintiff should have sought a refund is further undermined by the fact that when Plaintiff sent Defendant Pre-Suit Notice of her claims, Defendant did not respond, leading Plaintiff to file this lawsuit.  *See* Kravec Decl., ¶¶ 2-7.  Defendant could have offered a resolution of Plaintiff's and other consumers' claims, but it has chosen not to do so.

---

[3] New York General Business Law § 349(h) provides for the recovery of "actual damages or fifty dollars, whichever is greater" and § 350-e(3) provides for the recovery of "actual damages or five hundred dollars, whichever is greater" for each violation.

## V. CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion to Dismiss.

Dated: May 30, 2023

Respectfully submitted,

**FEINSTEIN DOYLE PAYNE &
KRAVEC, LLC**

By: */s/ Joseph N. Kravec, Jr.*
    Joseph N. Kravec, Jr. (No. JK-3696)

29 Broadway, 24th Floor
New York, NY 10006-3205
Telephone: (212) 952-0014
Email: jkravec@fdpklaw.com

-and-

429 Fourth Avenue
Law & Finance Building, Suite 1300
Pittsburgh, PA 15219
Telephone: (412) 281-8400
Facsimile: (412) 281-1007

Antonio Vozzolo, Esq. (petition for
  admission to be filed)
Andrea Clisura, Esq. (petition for admission
  to be filed)

**VOZZOLO LLC**
499 Route 304
New City, NY 10956
Telephone: (201) 630-8820
Facsimile: (201) 604-8400
Email: avozzolo@vozzolo.com
Email: aclisura@vozzolo.com
-and-
345 Route 17 South
Upper Saddle River, NJ 07458
Telephone: (201) 630-882
Facsimile: (201) 604-840

*Counsel for Plaintiff and the Proposed
Classes*